C.A. NO. 4:22-cv-00476-O

In the
United States District Court for the Northern District of Texas
Fort Worth Division

────────────

ANTONIO LOPEZ-VICTORINO,
FATHER OF GERARDO LOPEZ-ORENDAY, DECEASED, INDIVIDUALLY AND AS
INDEPENDENT ADMINISTRATOR OF THE ESTATE OF GERARDO LOPEZ-ORENDAY,
DECEASED, AND BLANCA ORENDAY, MOTHER OF GERARDO LOPEZ-ORENDAY, DECEASED,
*Plaintiffs*,

v.

BRIAN LYNN COLBURN, GREGORY LYNN BONK, TARGET CORPORATION,
HOGAN DEDICATED SERVICES, LLC, HOGAN PERSONNEL, LLC,
HOGAN TRANSPORTS, INC., AND HOGAN SERVICES, INC.
*Defendant*s,

v.

MARIA JACKSON,
WIFE OF GERARDO LOPEZ-ORENDAY, DECEASED,
*Intervenor.*

────────────

## PLAINTIFFS' AND INTERVENOR'S
## BRIEF IN SUPPORT OF MOTION TO REMAND

────────────

**M. Kevin Queenan**
  State Bar No. 16427150
**Carlos Lopez**
  State Bar No. 24083414

**QUEENAN LAW FIRM, P.C.**                   ATTORNEYS FOR PLAINTIFFS
731 Station Drive                          ANTONIO LOPEZ-VICTORINO, FATHER OF
Arlington, Texas 76015                     GERARDO LOPEZ-ORENDAY, DECEASED,
(817) 635-3333                             INDIVIDUALLY AND AS INDEPENDENT
(817) 635-4444 (FAX)                       ADMINISTRATOR OF THE ESTATE OF
                                           GERARDO LOPEZ-ORENDAY, DECEASED, AND
                                           BLANCA ORENDAY, MOTHER OF GERARDO
                                           LOPEZ-ORENDAY, DECEASED

**Jeffrey L. Weinstein**
  State Bar No. 21096450

**WEINSTEIN LAW**
518 East Tyler Street
Athens, Texas 75751                              ATTORNEY FOR INTERVENOR
(903) 677-5333                                   MARIA JACKSON, WIFE OF
(903) 677-3657 (FAX)                    GERARDO LOPEZ-ORENDAY, DECEASED

## TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Introduction & Relevant Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Timeliness of Motion to Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Arguments & Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.     Not all parties have joined and/or consented to the removal of this matter. . . . . . . 4

      B.     Defendants Colburn and Bonk were not co-employees of Mr. Lopez-Orenday, thus are not immune from liability or fraudulently joined. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.     Mr. Lopez-Orenday was employed by Hogan Personnel. . . . . . . . . . . . . 10

            2.     Defendant Colburn was employed by Hogan Dedicated. . . . . . . . . . . . . 11

            3.     Defendant Bonk was employed by Hogan Services. . . . . . . . . . . . . . . . . 12

            4.     This Court will be required to "pre-try" the issue of the employer/employee relationships in order to negate the viable claims against Defendants Colburn and Bonk. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      C.     Even if all individuals are co-employees, viable and legally recognized causes of action remain against Defendant Colburn . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      D.     There is no diversity of citizenship between the parties . . . . . . . . . . . . . . . . . . . . . 18

      E.     There is no evidence of bad faith in this matter, the issue is a red-herring and is moot . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Attorney Fees and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Response to Motion to Transfer Venue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Conclusion & Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Certificate of Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# <u>INDEX OF AUTHORITIES</u>

Title                                                                                                           Page

## CASES

*Aguirre v. Vasquez*, 225 S.W. 3d 744 (Tex. App. –Houston [14th District] 2007, no writ) . . . . . . . .  17

*B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 10

*Bennett v. United Rentals (North America), Inc.*, No. 3:19-cv-00270, 2019 WL 5293544 (S.D. Tex. Oct. 18, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Blanco v. Knight Transp., Inc.*, No. P:21-CV-00040-DC, 2021 WL 8053509 (W.D. Tex. Dec. 7, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Bourne v. Wal-Mart Stores, Inc.*, 582 F. Supp. 2d 828 (E.D. Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . .  9

*Burkett v. Welborn*, 42 S.W.3d 282 (Tex. App.—Texarkana 2001, no pet.) . . . . . . . . . . . . . . . . . . . .  16

*Cacoilo v. Sherwin-Williams Co.*, 902 F.Supp.2d 511 (D.N.J.2012) . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . .  4

*Corfield v. Dallas Glen Hills LP*, 355 F.3d 853 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . .  8

*Doe v. Kerwood*, 969 F.2d 165 (5th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 7

*Dudley v. Comm. Public Serv. Co.*, 108 F.2d 119 (5th Cir. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 17

*Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473 (Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . .  8

*Getty Oil v. Ins. Co. of North Am.*, 841 F.2d 1254 (5th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 9

*Guevara v. Wal-Mart Stores, Inc.*, No. C.A. C-07-08, 2007 WL 397490 (S.D. Tex. Feb. 1, 2007) . . . . .  8

*Guillory v. PPG Indus., Inc.*, 434 F.3d 303 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Hart v. Bayer Corp.*, 199 F.3d 239 (5th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . 5

*Hoyt v. Lane Constr. Corp.*, 927 F.3d 287 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Rodriguez*, 79 F.3d 467 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Keller Logistics Grp., Inc. v. Navistar, Inc.*, 391 F.Supp.3d 774 (N.D. Ohio 2019) . . . . . . . . . . . . . . . . 20

*Knudson v. Systems Painters, Inc.*, 634 F.3d 968 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Laughlin v. Prudential Ins. Co.*, 882 F.2d 187 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22

*Marquette Bus. Inc. v. Am.'s Kitchen, Inc.*, No. CIV.A. 3:09-CV-1937-D, 2010 WL 1711767 (N.D. Tex. Apr. 28, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mo-Vac Serv. Co., Inc. v. Escobedo*, 603 S.W.3d 119 (Tex. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Potter v. Cabello*, No. 3:19-CV-1330-G, 2019 WL 6173763 (N.D. Tex. 2019) . . . . . . . . . . . . . . . . . . 17

*Reynolds v. Ford Motor Co.*, 2004 WL 2870079 (N.D. Tex. Dec. 13, 2014) . . . . . . . . . . . . . . . . . . . . . 10

*Seguros Comercial Am., S.A. de C.V. v. Am. President Lines, Ltd.*, 934 F. Supp. 243 (S.D. Tex. 1996) . . 4

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Taylor v. Medtronic, Inc.*, 15 F.4th 148 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Waymire v. Leonard*, 724 F. Supp. 2d 876 (S.D. Ohio 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Western Steel Co. v. Altenburg*, 206 S.W.3d 121 (Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wingfoot Enterprises v. Alvarado*, 111 S.W.3d 134 (Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**CODES AND STATUTES**

Federal

8 C.F.R. § 274a.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8 C.F.R. § 274a.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1446 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 19

28 U.S.C. § 1447 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 21

Texas

TEXAS CONST. ART. 16, § 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TEX. LAB. CODE § 401.011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TEX. LAB. CODE § 408.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

**RULES**

FED. R. CIV. P. 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

FED. R. CIV. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19

N.D. TEX. CIVIL RULES 11.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

TEX. R. CIV. P. 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## JOINT BRIEF IN SUPPORT OF MOTION TO REMAND

TO THE HONORABLE REED O'CONNOR,
        UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Antonio Lopez-Victorino, Father of Gerardo Lopez-Orenday, Deceased, individually and as Independent Administrator of the Estate of Gerardo Lopez-Orenday, Deceased, and Blanca Orenday, Mother of Gerardo Lopez-Orenday, Deceased ("Plaintiffs"), and Maria Jackson, Wife of Gerardo Lopez-Orenday, deceased ("Intervenor"), file this, their brief in support of their motion to remand, and respectfully request that this cause be remanded to the 96th Judicial District Court of Tarrant County, Texas (the "Trial Court") where this cause was originally and properly filed, pursuant to 28 U.S.C. § 1447(c), and, in support thereof, show the following:

## I. INTRODUCTION & RELEVANT FACTS

1.      This suit arises out of a tragic and wholly unnecessary disaster that occurred at a Target Distribution Center located in the vicinity of 4333 Power Way, Midlothian, Ellis County, Texas (the "Distribution Center"), that occurred on October 10, 2020. On that date, just before daybreak, Gerardo Lopez-Orenday ("Mr. Lopez-Orenday") was tragically struck by a TICO truck ("TICO Truck") being operated by Defendant Brian Lynn Colburn ("Defendant Colburn"), while on the premises of the Distribution Center (the "Incident"). Defendant Colburn played a substantial part in the direction, instruction, guidance, and operation of the TICO Truck on the premises of the Distribution Center at the time of the Incident.

2.      Plaintiff Antonio Lopez-Victorino and Intervenor, Mr. Lopez-Orenday's wife, initially brought this suit asserting claims against Defendant Colburn in the 96th Judicial District Court of Tarrant County, Texas (the "Underlying Lawsuit"). [Doc. 2, pg. 2 and pg. 203]. After a year of attempting to obtain relevant additional discovery and several attempts to complete relevant and goal-directed inspections, Plaintiffs and Intervenor added additional claims and defendants. On May 10 and

11, 2022, claims were added against Defendant Gregory Lynn Bonk ("Defendant Bonk"). [Doc. 6, pg. 49 and pg. 75]. On May 12 and 13, 2022, claims were added against Defendant Target Corporation ("Target") and Hogan Dedicated Services, LLC ("Hogan Dedicated"), Hogan Personnel, LLC ("Hogan Personnel"), Hogan Transports, Inc. ("Hogan Transports"), and Hogan Services, Inc. ("Hogan Services") (collectively referred to herein as the "Hogan Defendants"). [Doc. 6, pg. 142, and pg. 189].

3.      The allegations pled provide that Defendant Bonk was a fleet manager over the fleet operation at the Distribution Center and that his employer was Hogan Services. Through discovery, the parties learned that prior to the date of the Incident Defendant Bonk had actual knowledge of the inadequate lighting conditions, unreasonable time constraints placed upon drivers, and inadequate visibility at the Distribution Center. These conditions substantially affected the safety of the operations at the Distribution Center. Defendant Bonk knew of the unreasonably dangerous conditions and failed to adequately warn or correct the conditions, thus allowing such conditions to go unmitigated. Defendant Bonk owed Mr. Lopez-Orenday an independent duty of care to correct or modify the dangerous conditions, of which Defendant Bonk had actual knowledge, related to the operation of the TICO Truck, and failed to do so.

4.      The Distribution Center and the TICO Truck were owned, possessed, managed, operated, and/or controlled by Target. Target also owned, possessed, managed, operated, and/or controlled the lighting illuminating the area where the Incident occurred. The inadequate lighting available in the area of the Distribution Center where the Incident occurred impeded, restricted, and/or lowered the visibility level available for the driver(s) of the TICO Truck, including, but not limited to, Defendant Colburn. Target performed inspections, certifications, service, maintenance, alterations, and modifications of and to the TICO Truck before the date of the Incident. As one example of such modifications, Target installed a computer screen for directing the drivers' operations in the line of

forward sight of the driver. Said alterations and/or modifications impeded and/or restricted the line of sight and/or vision of the driver(s) of the TICO Truck, including, but not limited to, Defendant Colburn. Target also entered into a contract with Hogan Dedicated to operate the TICO trucks at the Distribution Center and undertook certain responsibilities associated with said operation.

5.     The documentary evidence demonstrates that at the time of the Incident Mr. Lopez-Orenday was employed by Hogan Personnel and/or Hogan Transports. Target even previously judicially admitted that Hogan Transports was the employer of Mr. Lopez-Orenday. [*See* Doc. 2, pg. 76]. Further, the evidence demonstrates Defendant Colburn was employed by Hogan Dedicated, and Defendant Bonk was employed by Hogan Services at all relevant times. Target, in fact, does not dispute that Defendant Colburn was employed by Hogan Dedicated.

6.     Nonetheless, the baseless foundation to Target's removal is its conclusory assertion that Plaintiffs' and Intervenor's claims against Defendants Colburn and Bonk are improper due to the assertion that Defendants Colburn and Bonk were "co-employees" of Mr. Lopez-Orenday, and, as such, are immune from liability. Even if Target could meet the necessary high burden of proof in the context of a fraudulent joinder claim (which it cannot) as demonstrated herein, Plaintiffs and Intervenor would still possess a legally viable claim against Defendant Colburn for gross negligence. [Sec. IV(c), below] Moreover, the purported co-employee position has been and remains in dispute and is inconsistent with the documents, Target's affidavit from Mr. Scott Randall, the Vice-President of Hogan Dedicated, and Target's pleadings. The discovery obtained since only solidifies that each individual at issue was employed by separate entities.

### III. <u>TIMELINESS OF MOTION TO REMAND</u>

7.      This motion is timely because it is being made within thirty (30) days after the filing of the purported joint notice of removal (the "Notice") under 28 U.S.C. § 1446(a).[1]

### IV. <u>ARGUMENTS & AUTHORITIES</u>

**A.      Not all parties have joined and/or consented to the removal of this matter.**

8.      Any consent to removal should be written.[2] A consenting defendant should sign the notice of removal or timely file a separate written notice of consent with the notice of removal.[3] 28 U.S.C. § 1446(b) mandates that all served defendants join in the removal notice within thirty days after the first defendant was served. Failure on the part of a served defendant to join in the removal notice during this thirty-day period renders the removal improvident.[4] This long-standing interpretation is often referred to as the "unanimity rule" or the "unanimous consent rule."[5] Failure to comply with the unanimity rule **<u>alone</u>** is a basis for remand.[6]

---

[1] *See* 28 U.S.C. § 1447(c).

[2] *See Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927, 932 (8th Cir. 2012); *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 76–77 (1st Cir. 2009); *Loftis v. United Parcel Serv.*, 342 F.3d 509, 516 (6th Cir. 2003).

[3] *See Esposito*, 590 F.3d at 76.

[4] *Seguros Comercial Am., S.A. de C.V. v. Am. President Lines, Ltd.*, 934 F. Supp. 243, 244 (S.D. Tex. 1996)(*citing Getty Oil v. Ins. Co. of North Am.*, 841 F.2d 1254, 1263 n. 12 (5th Cir.1988).

[5] *Marquette Bus. Inc. v. Am.'s Kitchen, Inc.*, No. CIV.A. 3:09-CV-1937-D, 2010 WL 1711767, at *2 (N.D. Tex. Apr. 28, 2010) (citations omitted) (referring to "unanimity rule"); *Doe v. Kerwood*, 969 F.2d 165, 169 (5th Cir.1992) (referring to "unanimous consent rule")).

[6] *Blanco v. Knight Transp., Inc.*, No. P:21-CV-00040-DC, 2021 WL 8053509, at *2-4 (W.D. Tex. Dec. 7, 2021)(emphasis added); *see also, Marquette Bus. Inc.*, No. CIV.A. 3:09-CV-1937-D, 2010 WL 1711767, at *4 ("removal is unavailable for failure to comply with the unanimity rule").

-4-

9.     In the Notice, Target represents to this Court that "all defendants in the state-court cause . . . hereby <u>JOINTLY</u> file this Notice." [*See* Doc. 1, pgs. 1-2 (emphasis in original)]. Yet, despite such representation, the Notice does not bear the actual or electronic signature of counsel for any other defendant, much less the Hogan Defendants, Target fails to provide any representation that has the consent of any other defendant and fails to provide a scanned image of the other counsel's signature demonstrating their consent. [*See* Doc. 1, pg. 24]. There is no indication that any of the Hogan Defendants, much less Defendant Colburn or Defendant Bonk, in fact consented to removal of this action. While, perhaps, the consent of Defendants Bonk and Colburn are arguably not required given the arguments of Target that they have been fraudulently joined, the same arguments are not made as it relates to any of the Hogan Defendants. Instead, Target represents to this Court that the Hogan Defendants "presently assume, without admitting, that they were properly joined." [Doc. 1, pg. 2]. Target does not argue, nor can it, that any of the Hogan Defendants have been fraudulently joined and/or are not properly joined. Target much less cannot argue that the Hogan Defendants are nominal defendants.[7] Thus, even in light of Target's view that there are only two properly joined defendants, neither defendant filed a consent to the Notice.

10.     Every pleading must be signed by at least one attorney of record in the attorney's name.[8] Courts are instructed to, in fact, strike an unsigned paper.[9] When the submission is made by electronic means, the electronic signature must be authorized by that person, together with that person's name on

---

[7] *See Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260 (4th Cir. 2013) (nominal party is one who has immaterial interest in the lawsuit and will not be affected by any judgment).

[8] Fed. R. Civ. P. 11.

[9] *Id.*

-5-

a signature block, in order to constitute the person's signature.[10] The United States District Courts in the Northern District of Texas further require that when a party is submitting a document by electronic means representing the consent of another person, the attorney who submits the document certifies that the document has been properly signed; the attorney submitting the document that is signed by another person must (1) include a scanned image of the other person's signature, or represent the consent of the other person in a manner permitted or required by the presiding judge; and (2) maintain the signed paper copy of the document for one year after final disposition of the case.[11] The Notice is completely devoid of any such requirements as it relates to the Hogan Defendants.

11.     Target provided an unsigned signature block for counsel for the Hogan Defendants, and nothing else. [*See* Doc. 1, pg. 24]. In conjunction with the Notice, Target further filed what was purported to be a joint certificate of interested persons on behalf of Target and the Hogan Defendants also omitting any signature of any counsel or anything else indicating their consent. [*See* Doc. 7, pg. 3]. On the date of both filings, the purported joint notice and joint certificate of interested persons, June 1, 2022, no Hogan Defendant had made an appearance in the Underlying Lawsuit. Interestingly, however, the Hogan Defendants would later file their own and very different certificate of interested persons on June 8, 2022 with their counsel's actual electronic signature that satisfied the requirements allowing for same, negating any intent that the prior filed "joint certificate of interested persons" filed by Target was intended to serve as the Hogan Defendants' certificate of interested persons as well. [*See* Doc. 12, pg. 1-3]. Much more than an unsigned signature block is required in order to qualify as a proper signature for purposes of filing a pleading and providing consent to remove a case. Simply providing an unsigned signature block does not demonstrate consent to a motion, authority, or

---

[10] FED. R. CIV. P. 5.

[11] N.D. TEX. CIVIL RULES 11.1.

permission to sign on behalf of another party, nor does it indicate the filing attorney has the consent of another party.

12.     If one of the defendants does not consent, the removal is procedurally defective and the case should be remanded if the plaintiff timely seeks remand.[12] "Each defendant shall have thirty (30) days after receipt by or service on that defendant of the initial pleading or summons described [above] to file the notice of removal," and "[i]f defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."[13] Hogan Dedicated was the first served defendant, having been served on May 13, 2022. [Doc. 6, pg. 254]. Target and the remaining Hogan Defendants were served on May 16, 2022.  [Doc. 6, pg. 238, 244, 250, and 289]. Target, Hogan Services, Hogan Transports, and Hogan Personnel had until June 15, 2022 to file their own notice of removal and/or their written consent to the Notice. The Hogan Defendants failed to file a notice of removal of their own, much less any pleading joining or consenting to the Notice. Given the clear and unambiguous evidence that Target has removed this action without the consent of all necessary parties, it has not satisfied the unanimous consent rule, and, thus, remand is required.

---

[12] *See Doe v. Kerwood*, 969 F.2d 165, 169 (5th Cir.1992); *see, e.g.*, *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150-153 (2d Cir. 2021)(remanded when one defendant, under mistaken belief that it had not been properly joined and served, did not provide notice of consent; subsequent filing of untimely consent did not cure defect); *Cacoilo v. Sherwin-Williams Co.*, 902 F.Supp.2d 511, 519-20 (D.N.J.2012)(remanded when removing defendant did not obtain consent from three properly served defendants within thirty (30) days after service on those defendants; subsequent filing of untimely consent did not cure defect).

[13] 28 U.S.C. § 1446 (b)(2)(B)-(C).

**B.      Defendants Colburn and Bonk were not co-employees of Mr. Lopez-Orenday, thus, are not immune from liability or fraudulently joined.**

13.      The doctrine of improper joinder is a narrow exception to the complete diversity requirement.[14] This statute is **strictly construed**, with "any doubt about the propriety of removal resolved **in favor of remand**."[15] The removing party bears the **heavy burden** of demonstrating improper joinder.[16] The rationale of the doctrine of improper joinder is that the right of removal should not "be defeated by a fraudulent joinder of a resident defendant ***having no real connection*** with the controversy."[17] In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either:

(1)      there is **no possibility** that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or

(2)      that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.[18]

14.      Target's basis for its assertion that Defendants Colburn and Bonk are improper or fraudulent parties relies wholly on its assertion that (1) Defendant Colburn and Defendant Bonk are immune under the TEXAS WORKERS' COMPENSATION ACTION ("TWCA") due to having the same employer as Mr. Lopez-Orenday, and (2) Plaintiffs and Intervenor are not permitted to assert claims against fellow employees of Mr. Lopez-Orenday. [*See* Doc. 1, pgs. 12-13]. As a threshold matter to both

---

[14] *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011).

[15] *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (emphasis added).

[16] *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003);  *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699, 701 (5th Cir.1999).

[17] *Guevara v. Wal-Mart Stores, Inc.*, No. C.A. C-07-08, 2007 WL 397490, at *2 (S.D. Tex. Feb. 1, 2007) (internal citations omitted)(emphasis added).

[18] *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)(emphasis added) (internal citations omitted).

positions, however, Target takes the position, contrary to its prior judicial admission, that all were employed by the same employer–Hogan Dedicated. [*See* Doc. 1, pgs. 13-14].

15.    Target assumes a heavy burden of proving a claim of fraudulent joinder because it must show there is no possibility the plaintiff would be able to establish a cause of action against the nondiverse defendants in state court.[19] Target has relied only on the first method of establishing improper joinder, and, as such, the test under this approach is whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[20] When applying this test, the court must "**resolve all disputed questions of fact** and all ambiguities in the controlling state law in favor of the non-removing party . . . [and] determine whether that party has any possibility of recovery against the party whose joinder is questioned."[21] The court must evaluate all unchallenged factual allegations, including those in the complaint, in the light most favorable to the plaintiff, resolving all contested issues of substantive fact and ambiguities in state law in favor of the plaintiff party.[22] If there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder."[23]

16.    "[T]he court may 'pierce the pleadings' and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim."[24] A court must not, however,

---

[19]    *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2nd Cir. 1998); *Knudson v. Systems Painters, Inc.*, 634 F.3d 968, 980 (8th Cir. 2011); *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).

[20]    *Id.*

[21]    *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir.2000) (citations omitted) (emphasis added).

[22]    *Griggs v. State Farm Lloyds*, 181 F.3d at 699–702.

[23]    *Bourne v. Wal-Mart Stores, Inc.*, 582 F. Supp. 2d 828, 835 (E.D. Tex. 2008)(citations omitted).

[24]    *Id.*

"**pre-try**" substantive factual issues in order to answer the discrete threshold question of whether the joinder of an in-state defendant is fraudulent.[25]  The court **must not** decide whether the plaintiff will actually or even probably prevail on the merits, but must look only for a reasonable possibility that plaintiff may do so.[26]  If that possibility exists, then "a good faith assertion of such an expectancy in a state court is not a sham...and is not fraudulent in fact or in law."[27]

### 1.  Mr. Lopez-Orenday was employed by Hogan Personnel.

17.     First and foremost, the evidence attached hereto clearly demonstrates that Mr. Lopez-Orenday's employer was not Hogan Dedicated, but rather Hogan Personnel. After the Incident, the HR director **certified** that Hogan Personnel was the employer of the deceased on documents related to life insurance, not Hogan Dedicated. [*See* exhibit A, appended to exhibit 1, affidavit of Andy Orenday Lopez, pages 006-015 of the appendix (Doc 36)].  The same entity, Hogan Personnel, was identified as Mr. Lopez-Orenday's employer earlier in the year on the USCIS Form I-9 completed only five months before the Incident and signed by Defendant Bonk indicating Mr. Lopez-Orenday's employer was none other than Hogan Personnel. [*See* exhibit C, appended to exhibit 2, affidavit of Michael Kevin Queenan, pages 034-035 of the appendix (Doc 36)].[28] Consistent with these irrefutable representations, attached hereto as exhibit 3, page 036 of the appendix (Doc 36), is a true and correct copy of a paystub/earnings

---

[25] *Reynolds v. Ford Motor Co.*, 2004 WL 2870079, at *2 (N.D. Tex. Dec. 13, 2014) (citing *B., Inc.*, 663 F.2d at 546).

[26] *Id.* at *2.

[27] *Id.* at *2 (quoting *B., Inc.*, 663 F.2d at 550).

[28] Other documents from the Midlothian Police Department, presumably procured from the employer of the deceased as part of the police investigation, confirming that Hogan Personnel was the employer of "our drivers" and undertaking safety and employee functions at the Distribution Center. This demonstrates that Hogan Personnel was more than just a paymaster because it was exercising employer duties at the site of the Incident. [*See* exhibit 2, Aff. of Michael Kevin Queenan, exhibits A-C, pages 018-035 of the appendix (Doc 36)].

statement of Mr. Lopez-Orenday which further provides his employer was Hogan Personnel, contrary to Target's assertions.

18.     The Immigration Reform and Control Act (IRCA) of 1986 requires all U.S. employers to complete a Form I-9 upon hiring a new employee to work in the United States.[29] The employer must attest to the information under penalty of perjury.[30] For purposes of this requirement, an "employer" is a person or entity, including an agent or anyone acting directly or indirectly in the interest thereof, who engages the services or labor of an employee to be performed in the United States.[31] By signing section 2 of the I-9, the employer attests that the information he entered in section 2, such as the employer's name, is complete, true, and correct to the best of his knowledge, and that he is aware of the severe penalties provided by law and may be subject to criminal prosecution for knowingly and willfully making false statements. As such, it is a punishable offense for the fleet manager to sign such a document with false information about the identity of Mr. Lopez-Orenday's employer. Interestingly, there is no I-9 indicating that Hogan Dedicated was employer of Mr. Lopez-Orenday.

19.     Further, despite Target now taking the convenient position that Hogan Dedicated was the employer of Mr. Lopez-Orenday, Target previously judicially admitted that Hogan Transports was Mr. Lopez-Orenday's employer, not Hogan Dedicated. [*See* Doc. 2, pg. 76].

**2.     Defendant Colburn was employed by Hogan Dedicated.**

20.     Further, the evidence supports and demonstrates that Defendant Colburn was employed by Hogan Dedicated. Target even takes the position that Defendant Colburn is employed by Hogan Dedicated. The Vice-President of Hogan Dedicated, Scott Randall, testified that Defendant Colburn

---

[29] 8 C.F.R. § 274a.2(a).

[30] 8 C.F.R. § 274a.2(a)(3).

[31] 8 C.F.R. § 274a.1(g).

was an employee of Hogan Dedicated. [*See* exhibit 4, aff. of Scott Randall, December 10, 2020, ¶ 5, page 037 of the appendix (Doc 36); *see also* exhibit 5, deposition of Scott Randall, pgs. 7:8-13, 42:5-15, pages 041-042 of the appendix (Doc 36)]. Mr. Randall also sponsored a second affidavit providing that Defendant Colburn was not employed by Hogan Personnel. [*See* exhibit 6, aff. of Scott Randall, March 9, 2021, ¶ 5, page 046 of the appendix (Doc 36)]. As such, Defendant Colburn's employer is not in dispute.

### 3.    Defendant Bonk was employed by Hogan Services.

21.    Lastly, Defendant Bonk judicially admits to being employed by Hogan Services. [Doc. 14, pg. 4, ¶ 4.11]. Mr. Randall, mentioned above, also testified that Defendant Bonk is employed by Hogan Services. [*See* exhibit 5, deposition of Scott Randall, pg. 152:1-2, page 044 of the appendix (Doc 36)]. When deposed under subpoena and asked the question directly, Defendant Bonk testified he was a fleet manager for "Hogan Transportation Dedicated Account," but acknowledged he was paid by Hogan Services. [*See* exhibit 7, deposition of Greg Bonk, pg. 12:5-23; 199:9-200:17, pages 049-050 of the appendix (Doc 36)]. There is no such entity registered in the State of Texas or the State of Missouri as Hogan Transportation Dedicated Account.

### 4.    This Court will be required to "pre-try" the issue of the employer/employee relationships in order to negate the viable claims against Defendants Colburn and Bonk.

22.    To attempt to support Target's position, a required analysis of all the evidence, including that which remains to be discovered, will be necessary to determine whether Defendant Colburn, Defendant Bonk, and Mr. Lopez-Orenday are either actual employees of or borrowed servants working under Hogan Dedicated. Such is precisely the type of "pre-trying" of issues that this Court is not required to do in order to remand this matter. Moreover, that analysis is an exercise in futility because,

even if all of the workers were co-employees, there remains a viable gross negligence claim against Defendant Colburn.

23.     Under the TWCA, "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the **employer** or an agent or **employee of the employer** for the death of or a work-related injury sustained by the employee."[32] Therefore, to invoke the TWCA's bar, it is required that Target establish conclusively through competent evidence that (1) Mr. Lopez-Orenday sustained a work-related injury; (2) Mr. Lopez-Orenday was covered by workers' compensation insurance coverage; and (3) Defendants Colburn and Bonk are employees of the same employer of Mr. Lopez-Orenday.[33]

24.     The SUPREME COURT OF TEXAS has held that an entity is considered an "employer" under the TWCA, if (1) the TWCA's definition of "employer" is met, or (2) the entity had the "right to control" the employee.[34] The TWCA defines "employer" as:

> [U]nless otherwise specified, a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage. The term includes a governmental entity that self-insures, either individually or collectively.[35]

As admitted, there is no contract between Hogan Personnel and Hogan Dedicated that relate to any of the truck drivers working at the Distribution Center. [*See* exhibit 5, deposition of Scott Randall, pg. 46:10-14, page 043 of the appendix (Doc 36)]. There are also no contracts that remotely touch on which entity employed each individual. Simply because one or more of the Hogan Defendants at the time of

---

[32] TEX. LAB. CODE § 408.001(a) (emphasis added).

[33] *See id.*, *see also, Western Steel Co. v. Altenburg*, 206 S.W.3d 121, 123 (Tex. 2006); *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475-77 (Tex. 2005).

[34] *Wingfoot Enterprises v. Alvarado*, 111 S.W.3d 134, 149 (Tex. 2003).

[35] TEX. LAB. CODE § 401.011.

the Incident were a named insured under the same workers' compensation insurance policy as Mr. Lopez-Orenday's employer does not conclusively establish that all Hogan Defendants were his employer for purposes of the TWCA. Under this analysis, given the testimony and evidence cited above, TWCA's definition of "employer" is met for Hogan Services as it relates to Defendant Bonk, for Hogan Dedicated as it relates to Defendant Colburn, and for Hogan Personnel as it relates to Mr. Lopez-Orenday.

25.    The evidence demonstrates that Hogan Dedicated did not control the workers. Defendant Colburn testified that management over him consisted of only Defendant Bonk and Mr. James Higby. [Exhibit 8, deposition of Brian Colburn, pg. 27:1-17, page 054 of the appendix (Doc 36)]. Just like Defendant Bonk, Mr. Higby, according to his own testimony, was employed by Hogan Services as the director of safety. [Exhibit 9, deposition of James Higby, pg. 10:18-23, page 057 of the appendix (Doc 36)]. Such demonstrates that control over Defendant Colburn came from Hogan Services employees only, not employees of Hogan Dedicated. Further, simply because the work was for the "benefit" of Hogan Dedicated, as contended by Target, does not conclusively establish an employer/employee relationship. Target wholly relies on its futile assertion that the work each individual performed was for the "benefit" of Hogan Dedicated. Under such analysis, Target will have this Court believe that every independent subcontractor providing work for the benefit of a general contractor or even a client are also employees of said general contractor or client. The idea that "for the benefit" equate to control is unfounded.

26.    "The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one."[36] "In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is **no possibility** that the plaintiff would be able to establish

---

[36] *In re Rodriguez*, 79 F.3d 467, 469 (5th Cir. 1996).

a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts."[37] "Even in a case in which 'state law liability was at best uncertain, [the Fifth Circuit] has held that the case was cognizable only in state courts.'"[38] Contested factual allegations are to be viewed **in the light most favorable** to the plaintiffs.[39] Even ambiguities in the application of state law favor a plaintiff in determining whether a suit should be remanded.[40]

27.     Consistent with the documentary evidence, Plaintiffs' and Intevenor's factual assertions in their respective petitions confirm that Mr. Lopez-Orenday, Defendant Colburn, and Defendant Bonk were not all employed by the same entity. Any argument or contrary oral testimony would require the Court to "pre-try" the employer/employee issue. Since there remains viable gross negligence claim against Defendant Colburn even if all of the works were co-employees, such analysis will not, as required, demonstrate there is absolutely **no possibility** that Plaintiffs and Intevenor would be unable to establish a cause of action against the in-state defendants.

**C.     Even if all individuals are co-employees, viable and legally recognized causes of action remain against Defendant Colburn.**

28.     In Plaintiffs' and Intervenor's petitions, each outlines Defendant Colburn's grossly negligent conduct that directly caused the death of Mr. Lopez-Orenday and assert a claim for exemplary damages. [*See* Doc. 6, pgs. 154-56, 174-76, 199-200, 216-17]. As result of same, each maintain a viable cause of action against Defendant Colburn that defeats Target's assertion he has been fraudulently joined. Generally, recovery of workers' compensation benefits as the exclusive remedy of an injured

---

[37] *Id.* at 469 (emphasis added)(citations omitted).

[38] *Id.* at 469 (citations omitted).

[39] *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

[40] *Id.* at 308.

employee also applies to actions against a co-employee or "employee of the employer" for conduct for which the employer is legally responsible under the doctrine of respondeat superior.[41]   The TWCA provides, however, that "this section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence."[42]   This is an exception to the exclusive remedy in section 408.001(a) for grossly negligent conduct. Further, Article 16, Section 26 of the Texas Constitution is the governing authority for the  Texas constitutional right for recovery of exemplary damages. This provision states "[e]very person, corporation or company, that may commit a homicide, through wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide."[43]

29.     When addressing the same question as to whether a plaintiff had a viable cause of action resulting from the death caused by a co-employee, the Fifth Circuit held that the Texas legislature did not have the authority "to change the right under the [Texas] Constitution to recover exemplary damages from a fellow employee, just as was held to be true of such a suit against the employer."[44] The Court reasoned that it would be absurd to allow recovery of exemplary damages against the employer, but then defeat the policy to punish homicides by exemplary damages "where the real culprit was a

---

[41] *See Burkett v. Welborn*, 42 S.W.3d 282, 287-89 (Tex. App.—Texarkana 2001, no pet.); TEX. LAB. CODE § 408.001.

[42] TEX. LAB. CODE § 408.001(b).

[43] TEXAS CONST. ART. 16, § 26.

[44] *Dudley v. Comm. Public Serv. Co.*, 108 F.2d 119, 120–22(5th Cir. 1939).

-16-

fellow employee, or where his malice or gross neglect cannot be imputed" to the employer.[45] Accordingly, the Court held that, just as the employer is subject to suit for exemplary damages, the fellow employee at fault is also subject to suit for recovery of exemplary damages.[46]

30.     Texas state courts and the U.S. District Court for the Northern District of Texas further agree with the *Dudley* decision.[47] Recently, in *Potter v. Cabello*, the Northern District of Texas adopted the holding in *Aguirre v. Vasquez* when faced with a similar issue. In *Potter*, Potter was fatally crushed between the loading dock and a yard mule being driven by Cabello while the two were employees of FedEx working at a FedEx facility.[48] Potter's estate filed a motion to remand after their claims for gross negligence against FedEx, and claims of negligence and gross negligence against co-employee Cabello, were swiftly removed to the Northern District by FedEx.[49] In concluding that the claim for gross negligence against Cabello was cognizable under Texas law, the court looked to *Aguirre*, which it determined was the only "Texas court of appeals cause in which the court considered the precise issue presented in this case," and that the *Aguirre* court's interpretation of the TWCA was a strong indicator of "what the Texas Supreme Court would do if faced with the same facts."[50] The court reasoned that in a case where the employer is stripped of the immunity provided by the TWCA due to the employer's gross negligence, it follows that the decedent's grossly negligent co-employee is stripped of immunity

---

[45] *Id.* at 122.

[46] *Id.* at 122–23.

[47] *See Aguirre v. Vasquez*, 225 S.W. 3d 744, 753-54 (Tex. App. –Houston [14th District] 2007, no writ); *Potter v. Cabello*, No. 3:19-CV-1330-G, 2019 WL 6173763 (N.D. Tex. 2019).

[48] *Potter*, No. 3:19-CV-1330-G, 2019 WL 6173763, at *1.

[49] *Id.* at *1-2.

[50] *Id.* at *4.

as well and, accordingly, a claim for gross negligence against co-employee Cabello was cognizable under Texas law.[51] It is no surprise that the court remanded the case.[52] Noting the same Texas Constitution provision referenced above, the Texas Supreme Court also recently reaffirmed that actions for gross negligence are excepted from the exclusivity of the workers' compensation remedy.[53]

31.     It is easy to see why Target would disagree with the established case law cited above. Target's disagreement and purported contrary case law, at the most, however, would only make it clearer that, at the very least, there is ambiguity in the controlling law of the state–something else that favors remand of this matter. Where there are questions as to whether to remand an action, the court will resolve all issues in favor of remand.[54] Thus, it is clear Defendant Colburn has not been fraudulently joined, is not immune from liability, and, as such, Target's removal is wholly improper.

**D.     There is no diversity of citizenship between the parties.**

32.     At the time the Underlying Lawsuit, at the time of the Notice, and through the time of the filing of this motion to remand, Plaintiffs and Intervenor are and have been residents and citizens of the State of Texas. The same is true as it relates to Defendants Colburn and Bonk, all undisputed facts. Thus, the citizenship of Plaintiffs, Intervenor, Defendant Colburn, and Defendant Bonk, at the time of the filing of the Underlying Lawsuit, at the time of the Notice, at the time of the filing of this motion to remand, and at all times in between is the State of Texas. A district court generally "cannot

---

[51] *Id.* at *4-5.

[52] *Id.* at *5.

[53] *Mo-Vac Serv. Co., Inc. v. Escobedo*, 603 S.W.3d 119, 124-25 (Tex. 2020).

[54] *See Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir. 1989).

exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants."[55] Accordingly, there is no diversity of citizenship.

**E.    There is no evidence of bad faith in this matter, the issue is a red-herring and is moot.**

33.    Target is correct that its motion to remand is beyond the one-year rule making same untimely.[56] Target dedicates a majority of its Notice to attempting to demonstrate purported bad faith on behalf of Plaintiffs and Intervenor as an excuse for removing this matter beyond the one-year rule. Plaintiffs and Intervenor, of course, vehemently dispute there was any bad faith.

34.    Plaintiffs and Intervenor have always had a duty to only assert factual contentions that have evidentiary support before filing certain pleadings and making certain representations to the Court. Counsel certifies that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: "(1) it is not being presented for any improper purpose. . . (2) the claims . . . are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."[57] Texas has similar rule that provides that attorneys certify that to best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment, or otherwise can be held guilty of a contempt.[58]

---

[55]  *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003).

[56]  28 U.S.C. § 1446 (c)(1).

[57]  FED. R. CIV. P. 11.

[58]  Tex. R. Civ. P. 13.

35.     What Target has called "aggressive" and "rigorous" pursuit of discovery amounts to five (5) depositions (only one of which was a Target employee), and multiple attempts to procure proper and adequate inspections of the premises and TICO Truck, the latter of which has been denied multiple times by Target itself. Such discovery was needed, in part, to procure evidentiary for counsel to consider the legal issues presented. Procuring such discovery and taking time to gather the relevant evidence is a litigation lawyer's stock in trade and hardly bad faith. Plaintiffs and Intervenor could not simply rely on Target's invitation to sue it. [*See* Doc. 1, pg. 5]. While Target views its liability as clear enough to request (multiple times) to be sued, Target did not admit it was liable in its answer, instead setting up multiple defenses and generally denying Plaintiffs' and Intervenor's claims. [*See* Doc. 17. Pg. 1-25; Doc. 18, pg. 1-26]. Target's just-sue-me demands seem strategic given Target's answer in this civil action.

36.     Bad faith exists when plaintiffs improperly join non-diverse defendants knowing there is no evidence to support a claim against said defendant, pursue their claims against said non-diverse defendant half-heartedly, make no serious efforts to establish their liability, and even go as far as dismissing their claims against said non-diverse defendant days after the one-year deadline to remove has passed.[59] Bad faith can also be shown where a plaintiff has no intention of pursuing a judgment against the non-diverse defendant, fails to pursue active litigation against the non-diverse defendant, and fails to depose same or issue only limited discovery related to same.[60] In the instant case, however, where there has been an active pursuit of litigation against the non-diverse defendant, there is no bad faith.[61]

---

[59] *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 292–94 (5th Cir. 2019).

[60] *Keller Logistics Grp., Inc. v. Navistar, Inc.*, 391 F.Supp.3d 774, 776–80 (N.D. Ohio Aug. 6, 2019).

[61] *Bennett v. United Rentals (North America), Inc.*, No. 3:19-cv-00270, 2019 WL 5293544, at *1–5 (S.D. Tex. Oct. 18, 2019).

37.     None of the above "bad faith" acts can be said about the pursuit of claims against Defendants Colburn and Bonk in the present matter. In the course of less than two (2) years of litigation, Plaintiffs and Intervenor have pursued and obtained the deposition of both individuals. In fact, Defendant Bonk was subpoenaed, deposed, and represented by counsel even before he was added to this suit. It was said deposition that confirmed his employer was an entity other than Hogan Personnel. Plaintiffs have even pursued corporate representative depositions of various Hogan Defendants and their employees to delve into the issue of who employed Defendant Colburn. Plaintiffs and Intervenor sought inspections of the premises and the TICO Truck in order to establish the liability facts against both Defendants Colburn and Bonk. The subject matter of the inspections themselves have been the topic of a multitude of contested hearings and even a petition for writ of mandamus filed by Target, all of which had to be handled so that counsel can satisfy their obligations under the Federal and Texas rules related to asserting factual contentions based on the evidence.

38.     Despite the clear evidence there is no bad faith on part of Plaintiffs and/or Intervenor in this matter as it relates to the timing of the addition of Target and the Hogan Defendants, that argument is only necessary if there was an actual objection based on the filing date of the Notice and if there was no other basis for remand. Given the multitude of reasons why this matter should be remanded, Plaintiffs and Intervenor forgo the right to object to the filing of the Notice beyond the one-year rule, and, instead, respectfully request remand on the bases asserted in this brief and the related motion to remand.

### V. ATTORNEY FEES AND EXPENSES

39.     Per 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Courts can reserve jurisdiction, in order to award reasonable attorney fees and costs associated with improper

removal.[62]  Given the actions taken by Target in sponsoring an affidavit with questionable testimony, asserting that there is no dispute surrounding the employers of Defendant Colburn, Defendant Bonk, and Mr. Lopez-Orenday and removing this suit a second time without even securing the consent of all the defendants and without first considering the proper legal authority, Plaintiffs and Intervenor respectfully request this Court order Target to pay Plaintiffs and Intervenor reasonable attorney fees and just costs associated with Target's removal in an amount to be determined by this Court.[63]

## VI. <u>RESPONSE TO MOTION TO TRANSFER VENUE</u>

40.    In the Notice, a titled section indicates a motion to transfer of venue, but Target provides no briefing nor justification for granting any such motion. The burden on the movant seeking a transfer is a heavy one.[64] To the extent Target is moving to transfer venue, Target wholly ignores its burden and fails to demonstrate, much less argue, that a transfer of this matter is required. Accordingly, Target's request should be in all things denied.

## VII. <u>CONCLUSION & PRAYER</u>

41.    Where there are questions as to whether to remand an action, a court will resolve the issue in favor of remand.[65] Target failed to provide written consent to removal by all required defendants. Further, Target's contention that Defendants Colburn and Bonk were improperly added for the sole purpose of depriving the federal court of jurisdiction is not supported by the uncontroverted documentary evidence, the judicial admission of Target that Hogan Transports was the employer, and

---

[62] *Waymire v. Leonard*, 724 F. Supp. 2d 876, 883 (S.D. Ohio 2010)

[63] After remanding a case, a court can reserve jurisdiction to award reasonable attorney fees and costs associated with improper removal, using the "Lodestar method." *Id.* at 882.

[64]  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)(citations omitted).

[65] *See Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir.1989).

the Randall affidavit wherein an officer and member of management of Hogan Dedicated swore that Mr. Lopez-Orenday was NOT employed by Hogan Personnel. Plaintiffs and Intervenor have articulated specific facts demonstrating the nature of the claims against Defendants Colburn and Bonk, and the law requires this Court to accept the allegations as true for purposes of analyzing a motion to remand.  The evidence herein clearly demonstrate that these individuals were employed by separate entities than that of Mr. Lopez-Orenday. Further, even if a co-employee relationship existed, Plaintiffs and Intevernor still possess a viable cause of action against Defendant Colburn. Thus, Defendants Colburn and Bonk have not been fraudulently joined and are not immune from liability.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs and Intervenor respectfully pray that this Honorable Court grant Plaintiffs' and Intervenor's joint motion to remand, deny the motion to transfer venue, remand this cause to the 96th Judicial District Court of Tarrant County, Texas, with the cost of such remand taxable to Target, award Plaintiffs and Intervenor reasonable attorney fees and costs, and for such other and further relief, both general and special, at law and in equity, to which Plaintiffs and Intervenor may be justly entitled.

Respectfully submitted,

By: /s/ M. Kevin Queenan
    M. Kevin Queenan, SB#16427150
       service@queenanlaw.com
    Carlos Lopez, SB#24083414
       carlos@queenanlaw.com

731 Station Drive
Arlington, Texas 76015
(817) 635-3333
(817) 635-4444 (FAX)

ATTORNEYS FOR PLAINTIFFS ANTONIO
LOPEZ-VICTORINO, FATHER OF
GERARDO LOPEZ-ORENDAY,
DECEASED, INDIVIDUALLY AND AS THE
INDEPENDENT ADMINISTRATOR OF
THE ESTATE OF GERARDO LOPEZ-
ORENDAY, DECEASED, AND BLANCA
ORENDAY,   MOTHER OF GERARDO
LOPEZ-ORENDAY, DECEASED

OF COUNSEL:

QUEENAN LAW FIRM, P.C.
731 Station Drive
Arlington, Texas 76015
(817) 635-3333
(817) 635-4444 (FAX)

Respectfully submitted,

By: /s/Jeffrey L. Weinstein
    Jeffrey L. Weinstein, SB#21096450
       jeff@weinsteinteam.com

518 East Tyler Street
Athens, Texas 75751
(903) 677-5333
(903) 677-3657 (FAX)

OF COUNSEL:

WEINSTEIN LAW
518 East Tyler Street
Athens, Texas 75751
(903) 677-5333
(903) 677-3657 (FAX)

ATTORNEY FOR INTERVENOR
MARIA JACKSON, WIFE OF GERARDO
LOPEZ-ORENDAY,  DECEASED

-24-

## <u>CERTIFICATE OF CONFERENCE</u>

This is to certify that M. Kevin Queenan, one of the attorneys for Plaintiffs, has complied with the meet and confer requirement and has made a reasonable effort to determine whether counsel for Defendant Colburn, Defendant Bonk, Defendant Target, and the Hogan Defendants are opposed to Plaintiffs' and Intervenor's motion to remand. Each have indicated they are opposed.

 /s/ M. Kevin Queenan         
M. Kevin Queenan

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the above and foregoing document has been served on the following parties via ECF on this 30th day of June, 2022:

Michael C. Wright, Esq.
Steven L. Russell, Esq.
RUSSELL & WRIGHT, PLLC
15770 Dallas Parkway, Suite 1050
Dallas, Texas 75248

Jeffrey L. Weinstein, Esq.
WEINSTEIN LAW
518 East Tyler Street
Athens, Texas 75751

Caitlin J. Morgan, Esq.
McCall Kathryn Bauersfeld, Esq.
POLSINELLI PC
2950 N. Harwood Street, Suite 2100
Dallas, Texas 75201

Britton St. Onge, Esq.
POLSINELLI PC
100 S. Fourth Street, Suite 1000
St. Louis, Missouri 63102

Donna C. Peavler, Esq.
Sara Kimbrough Scudday, Esq.
PEAVLER|BRISCOE
2215 Westgate Plaza
Grapevine, Texas 76051

Roy T. Atwood, Esq.
ATWOOD GAMEROS, L.L.P.
6116 N. Central Expressway, Suite 1400
Dallas, Texas 75206

 /s/ M. Kevin Queenan         
M. Kevin Queenan

J:\1168\1\PLEADINGS\FEDERAL\MOTION TO REMAND\BRIEF IN SUPPORT OF MOTION TO REMAND.wpd